# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BENNETT, | NO. 3:18-CV-00517 |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| PRIMECARE MEDICAL INC., *et al.*, | (MAGISTRATE JUDGE CARLSON) |
| Defendants. | |

## MEMORANDUM

Presently before me is Magistrate Judge Carlson's Report and Recommendation ("R&R") (Doc. 30) regarding Defendants' Motions to Dismiss (Docs. 18 and 19). Plaintiff Michael Bennett, proceeding *pro se*, alleges that Defendants failed to provide him with adequate nutrition and medical care while detained before trial at the Cumberland County Prison. (Doc. 1 at ¶¶ 14-26). Magistrate Judge Carlson recommends that the Motions to Dismiss be denied as Bennett has adequately pled all his claims. (Doc. 30 at 4). Defendant Aramark Correctional Services, Inc. timely objected to the R&R, arguing that Bennett has not adequately pled *Monell* (a form of employer liability for constitutional torts) and negligence claims against it. (Doc. 31 at 2). For the reasons that follow, Bennett has adequately pled those claims, so Magistrate Judge Carlson's R&R will be adopted and the Motions to Dismiss will be denied.

## I. Background

I construe Bennett's *pro se* Complaint (Doc. 1) liberally, taking his factual allegations as true and drawing all inferences in his favor. *Capograsso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 & n.1 (3d Cir. 2009).

Bennett suffered a work-related accident in early 2016, which resulted in the fracturing of his jaw. (Doc. 1 at ¶ 14). Immobilization braces were surgically implanted, which were needed to help his jaw heal. (*See id.*). Soon after his injury, Bennett "was

charged with theft and unauthorized use of a motor vehicle." (*Id.* ¶ 15). Police officers arrested Bennett on these charges before he could have his immobilization braces removed by his oral surgeon, Doctor Harry Meyers. (*Id.*). Bennett was then brought to Cumberland County Prison, where medical services are provided by Defendant PrimeCare Medical, and food services provided by Defendant Aramark Correctional Services. (*See id.* ¶¶ 5-6, 15).

Given Bennett's jaw condition, one or more administrators at PrimeCare contacted Dr. Meyers for guidance. (*Id.* ¶ 16). PrimeCare ordered Bennett be given a liquid diet, "whether through the advice of Dr. Meyers or otherwise." (*Id.*). This diet, which lasted fifty (50) days, consisted of one "eight-ounce cup of beef broth" and one "eight-ounce cup of chicken broth, three times per day, and nothing else." (*Id.* ¶ 17). According to Bennett, this diet was only supposed to be ordered "for patients with stomach issues," and for no longer than three days. (*Id.* ¶ 40). As a result of such a harsh diet, Bennett lost "more than 20 percent of his body weight" (*id.* ¶ 23) and suffered "abdominal pain, headaches, depression, and fear of loss of life," (*id.* ¶ 19).

Bennett did what he could to get his diet fixed: he contacted PrimeCare and Aramark. (*See id.* ¶ 18). But PrimeCare told Bennett to take up his complaints about his food with Aramark. (*Id.*). Aramark, in turn, told Bennett "that if he wanted his diet changed, he would have to accomplish that through [PrimeCare's] staff." (*Id.*) "Bennett was informed that [Aramark] did not have any other type of diet available . . . and that no policy was in place to deal with a situation such as his." (*Id.* ¶ 25).

On the basis of these allegations, Bennet sued PrimeCare, Aramark, and their as-yet-unidentified corporate policymakers (John Does I and II). (*Id.* ¶¶ 5-8). Bennet lists four causes of action in his complaint: (1) and (2), constitutional violations for Defendants' failure to provide Bennett adequate nutrition and medical care (*id.* ¶¶ 27-42); (3) *Monell* liability on PrimeCare and Aramark's part for constitutionally inadequate policies (*id.* ¶¶ 43-49); and

2

(4) common law negligence against all Defendants (*id.* ¶¶ 50-53). Defendants responded with Motions to Dismiss. (Docs. 18 and 19).

Magistrate Judge Carlson reviewed the Motions to Dismiss and the parties' briefing, and issued an R&R on September 14, 2018. (Doc. 30). Magistrate Judge Carlson recommends that I deny both Motions because Bennett has adequately pled his claims. (*Id.* at 4). Specifically, Magistrate Judge Carlson concluded that Bennett sufficiently pled *Monell* liability on Aramark's part because Bennett alleged that Aramark's decisionmakers "repeatedly rebuffed his dietary complaints, stating as a matter of corporate policy that other actors were responsible for meeting his unique nutritional needs." (*Id.* at 21). And as to Bennett's negligence claim against Aramark, Magistrate Judge Carlson concluded that Aramark, as a food service provider, owed a duty of care to Bennett, "who was dependent upon others to meet his basic nutritional requirements." (*Id.* at 23). Aramark timely filed its objections to the R&R, arguing that these two conclusions are erroneous. (Doc. 31 at 2). According to Aramark, it cannot be liable under *Monell* because Bennett (1) fails to identify a decisionmaker who knew of or participated in the events alleged and (2) does not allege any Aramark policy resulted in any constitutional violations. (*Id.* at 5-7). Bennett's negligence claim must also fail, says Aramark, because it owed no duty to Bennett: "there are no facts alleged . . . that Aramark had responsibility or authority to provide Plaintiff with anything other than a liquid diet." (*Id.* at 8).

The R&R and Aramark's objections are now ripe for review.

## II. Legal Standard

**A.    Review of the R&R**

If objections to a magistrate judge's R&R are filed, I must conduct a *de novo* review of the R&R's contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)). I may accept, reject, or modify, in whole or in part, the

3

factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits me to rely on the recommendations of the magistrate judge to the extent I deem it proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the least, courts should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.     Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading

4

standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, a court considers the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). I may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. I need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

### III. Discussion

I start with the uncontested portions of Magistrate Judge Carlson's R&R. Aramark has only objected to the portions of the R&R that recommend its Motion to Dismiss be

denied as to Bennett's negligence and *Monell* claims, and PrimeCare has not objected to the R&R at all. I find no clear error or manifest injustice in the uncontested portions of the R&R, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998), and will adopt those portions *in toto*. PrimeCare's Motion to Dismiss will therefore be denied.

I address Aramark's objections next. As I explained before, Ararmark objects to the R&R on two grounds: (1) it cannot be liable under *Monell* because Bennett failed to identify a knowing or involved policymaker and allege any deficient policy or custom; and (2) it owed no duty to Bennett and was thus not negligent.

### A.   *Monell* liability

The first objection pertains to Bennett's *Monell* claim. Even though a plaintiff alleges a state actor deprived him of his constitutional rights, a government employer "cannot be held responsible for the acts of its employees" under normal tort theories of liability. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, for a governmental or quasi-governmental employer (like Aramark) to be liable for its employees' actions, a plaintiff must allege "that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation [alleged.]" *Id.* at 584 (citation omitted). A plaintiff must also "link the alleged offending policies or customs" to someone "who had policy-making authority." *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143-44 (3d Cir. 2012); *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (*Monell* liability only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

According to Aramark, Bennett has failed to allege the involvement of any Aramark policymaker. (Doc. 31 at 3-6). In its objections, Aramark concedes that Bennett names "John Doe II" as a defendant, to whom Bennett complained and whom the Complaint describes as a "director and/or administrator [of Aramark], overseeing the day-to-day operations and preparations of foods, acting as dietician and/or nutritional health supervisor

6

at the Cumberland County Prison[.]" (*Id.* at 5 (citing Doc. 1 at ¶ 8)). But Aramark contends that "an unidentified Aramark director or administrator" does not amount to a "policymaker." (*Id.*). I am required, though, to ignore conclusory allegations, construe Bennett's Complaint liberally, and draw all inferences in his favor. "Policymaker" is no magic word; however, Bennett's allegations that he complained to an Aramark administrator who oversaw daily operations and food preparation, and who responded to Bennett that it was, in effect, Aramark's policy to ignore dietary complaints and refer them to PrimeCare, are enough for me to infer that this administrator was an Aramark policymaker with actual involvement. *See Harris v. City of Phila.*, 171 F. Supp. 3d 395, 403-04 (E.D. Pa. 2016); *cf. McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009) (plaintiff "fail[ed] to allege conduct by a municipal decisionmaker" where there was "no allegation that [decisionmakers] were aware of, let alone directed," the acts complained of and the allegations did not "support, indirectly, such an inference"). I therefore find that Bennett has adequately alleged the involvement of an Aramark policymaker for purposes of *Monell* liability.

Next, Aramark contends that Bennett failed to allege that any Aramark policy resulted in a constitutional violation. (Doc. 31 at 6-7). As Aramark reads the Complaint, Bennett claims that Aramark does not have a policy at all. (*Id.*). And on top of that, Bennett "does not plead that Aramark had the authority to alter his special diet[;]" he instead pleads facts that indicate PrimeCare was responsible for his diet. (*Id.* at 7). As to the first point, construing Bennett's complaint liberally, Bennett alleges either that Aramark had a policy of ignoring dietary complaints and referring them to PrimeCare, or that Aramark had no policy in place to address dietary complaints. Bennett is entitled to plead in the alternative, Fed. R. Civ. P. 8(d), and the "failure to establish a policy" can still lead to *Monell* liability. *Bouniconti v. City of Phila.*, 148 F. Supp. 3d 425, 439 (E.D. Pa. 2015) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584-85 (3d Cir. 2003) ("A reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' needs.")). So the fact that Aramark reads

7

the Complaint as stating there was no policy does not undermine the sufficiency of Bennett's allegations. The same reasoning applies to Aramark's second point—that the Complaint indicates PrimeCare had sole responsibility. This could certainly be the case, but when considering a motion to dismiss I can only look to the complaint. Bennett alleges that PrimeCare and Aramark were responsible for providing him with adequate nutrition, either jointly or in the alternative. (*See* Doc. 1 at ¶ 48 (alleging each Defendant said the other was responsible)). At the pleading stage, that suffices. I therefore find that Bennett has stated a *Monell* claim against Aramark, and Aramark's Motion to Dismiss will be denied as to that claim.

**B.    Negligence**

Aramark's second objection is also lacking. To state a negligence claim, Bennett must have alleged a legal duty on Aramark's part, breach of that duty, a "[c]ausal connection" between the breach of the duty and Bennett's injury, and actual damages. *Reilly v. Tiergarten, Inc.*, 633 A.2d 208, 210 (Pa. Super. Ct. 1993). Aramark argues that it could not have been negligent because it owed no duty to Bennett: "there are no facts alleged . . . that Aramark had responsibility or authority to provide Plaintiff with anything *other than* a liquid diet." (Doc. 31 at 8 (emphasis added)). That the Complaint lacks such allegations is not surprising, however. Bennett's point is that Aramark was negligent because it provided him nutritionally inadequate meals, not necessarily because it failed to move him off a liquid-only diet. (*See* Doc. 1 at ¶¶ 51-53). In other words, Bennett claims Aramark should have known better than to provide someone on a liquid-only diet with just two cups of broth three times a day. (*See id.* ¶¶ 37, 40, 47). Because Aramark agrees that Bennett sufficiently alleges Aramark's "responsibility or authority" to provide him with a liquid diet, (Doc. 31 at 8), I find that Bennett has stated a negligence claim. Aramark's Motion to Dismiss will be denied as to that claim.

## IV. Conclusion

For the reasons stated above, Magistrate Judge Carlson's R&R will be adopted, and the Motions to Dismiss filed by Aramark and PrimeCare will be denied.

An appropriate order follows.

November 20, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge